Curia, per

O’Neall, J.
According to the view which I take of this case, the legal title to the land iti dispute, is in the defendant, Abraham McJunkin, and the plaintiffs are not entitled to recover.
Chancellor Harper’s decree, of June, 1829, in the case of John T. McJunkin vs. John Bates & others, was provisional merely. If, upon the coming in of the commissioner’s report, it appeared that the execution of the Ordinary vs. John T. McJunkin, (under which his land had been sold and purchased by Thomson,) was satisfied, then the sale and the deed were to be set aside; but if the fact did not so appear, then the bill was to be dismissed. No one can pretend that such a decree could operate beyond its terms. Its effect depends upon a fact, not then, but *228 afterwards to be, ascertained. *If that fact never was ascertained, it follows, that the decree can have no effect; so far as that case was concerned, none, save the parties before the Court had the right to complain, if the case rested at the point to which the decree reduced it. They chose, instead of pursuing the litigation, to compromise. The money paid by Thomson, on bis purchase at the sheriff’s sale, and the costs which he had incurred were secured to be paid to him, by the note of Joseph A. McJunkin, John T. McJunkin, and Benjamin McJunkin, and thereupon he, by the consent, and indeed by the direction of, John T. McJunkin, conveyed the land to his son, Joseph A. AlcJunkin.
The legal effect of this arrangement, was the same as that which would result from a discontinuance at law. It was a withdrawal of the case in equity, while something yet remained to be done, in order to ascertain and fix the rights of the parties.
This left the sheriff’s sale and deed to Thomson, a subsisting and legal divestiture of the estate of John T. McJunkin. Until they are set aside for fraud proved, and not merely conjectured, we are bound to give them effect. In general, a debtor is the only one who can complain about a fraud committed on his right, by a sale under execution. Still, if he was a party consenting to a fraudulent sale of his property by the sheriff, Ms creditors might have relief against it.(a) The ground on which the deed to Thomson was assailed in equity, was, that the execution under which the sheriff sold, was satisfied. This, if true, and there was no other subsisting execution in the sheriff’s office at the time the land was sold, would render the sale void; and it is possible, if the debtor did not think proper to question such a sale, that Ms creditors, having no other remedy, might avail themselves of the objection.
But certainly these plaintiffs do not occupy that position. The judgment under which they now claim was recovered on a judgment in favor of James Dugan against John T. McJunkin, on which there was an execution lodged in the sheriff’s office, on the 16th October, 1826. The sheriff’s sale to Thomson was subsequent; and hence the sale would be referred, if the ordinary’s execution was satisfied, to Dugan’s execution, and Ms judgment would be entitled to the proceeds of the sale, and not to a right to set up the satisfaction of the elder execution, and claim re"se^ the land. This, it seems *to me, leaves the plaintiffs without any ground on which to stand. For McJunkin’s title being conveyed to Thomson, and they being so situated in the derivation of their title that they cannot set up the supposed satisfaction of the execution, under which the sheriff sold and conveyed, it would seem to follow that the sale to, and purchase by them, of the interest of John T. McJunkin, in the land, was the sale and purchase of nothing. But it is said that John T. McJunkin paid his son’s note to Thomson. If this be so, still it can have no effect to re-vest in him a title to lands of which he had legally been divested. That could only be done by deed. If the whole arrangement between him and his son had been fully proved to be, that he should pay the money to Thomson, and that the son should hold the land for his use, the utmost which could be said of it would be that it was a use unexecuted by the statute, and remained, therefore, a mere trust in equity, which this Court could not notice. Harrison vs. Hollis, (2 N. & McC. 578.)
*229 These views make it unncessary to notice very particularly the subsequent matters in this case. For Joseph A. McJunkin having the legal estate in the land, could convey it to Abraham McJunkin, and his title would be only incumbered by the trust (if in fact there was any,) in favor of John T. McJunkin. He alone can avail himself of that. There could be no fraud on the rights of creditors in the sale under Malone’s judgment. For John McJunkin had then no estate in the land. But upon the facts, I confess that I am unable to discover any fraud on the part of Abraham McJunkin. He told his nephew, on the day on which the land was sold under the Malone judgment, that he was afraid his title to the land was not good, but as he was willing to give him $1200 for the benefit of his family, he directed him to forbid the sale, and he would do so and take the sheriff’s title. This was an indirect mode of legalizing a doubtful title, but still a valuable money consideration was to be paid, and was paid. For although he paid Joseph A. personally, nothing, yet he paid the Malone judgment, debt, interest, and costs, exceeding $200.
Wood proved notes given by Abraham, on account of the land, to the amount of $800 ; and Kesler proved that when the deed was executed by Joseph A. to Abraham, that a note of $600 was given by Abraham, and some money paid. ^Taking all these facts together, I should infer that the consideration of the $1200 was fully paid ; and this conclusion is much strengthened by the fact that John T. McJunkin lived upon the land some years after Abraham bought, and then removed to the West, leaving him in the sole possession and enjoyment. Neither he, nor Joseph A McJunkin, has, so far as we are informed, complained of any fraud upon them, as committed by Abraham McJunkin, and if the case stood alone upon the facts, I should be slow to conclude that the consideration of $1200 had not been paid. But upon the law, for the reasons which I have previously given, I am clear the plaintiffs are not entitled to the verdict which has been found for them.
The motion for a new trial is granted.
Gantt and Richardson, JJ., concurred.

 3 Rich. 119; 1 Rich. 21; 1 Hill, 415. An.